UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THE STATE OF NEW YORK ex rel.
ERIC RASMUSEN,

                             Plaintiff,


            -against-                                                    15-cv-07826 (LAK)


CITIGROUP INC.,

                             Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


                        **MEMORANDUM OPINION**


                Appearances:


                        Daniel C. Oliverio
                        John L. Sinatra, Jr.
                        HODGSON RUSS LLP
                        *Attorneys for Plaintiff*


                        Mario J. Verdolini
                        Alexander Fonzari Mindlin
                        Jessica L. Turner
                        Edmund Polubinksi, III
                        DAVIS POLK & WARDWELL
                        *Attorneys for Defendant*


LEWIS A. KAPLAN, *District Judge.*

                Plaintiff-relator Eric Rasmusen brought this New York False Claims Act case on

behalf of the State of New York for damages stemming from allegedly improper deductions in the

state income tax returns of Citigroup Inc. ("Citigroup").  Citigroup removed the case from the state

courts and now moves to dismiss the complaint for failure to state a claim upon which relief may

2

be granted.  The Court, however, concludes that it lacks subject matter jurisdiction and remands the case.

*Facts*[1]

The Internal Revenue Code ("IRC") generally permits a corporate taxpayer that sustains a net operating loss (*i.e.,* an excess of expenses over revenues in a given year) (an "NOL") to carry that loss backward for up to two years and forward for up to twenty years and deduct it against otherwise taxable income in the years with respect to which the NOL is carried back or forward.[2]  Special rules, however, apply in the context of corporate reorganizations.  IRC Section 382, briefly summarized, sharply limits a corporation from deducting NOLs in years after a year in which it undergoes an "ownership change."

During the time period relevant here, New York imposed a franchise tax on the "entire net income" of banking corporations,[3] among other entities.  The relevant statute generally defined "entire net income" as "the entire taxable income . . . (1) which the taxpayer is required to report to the United States treasury department"[4] but "computed without the deduction or exclusion of" various items set out in the statute, none of which is material here.[5]  Section 1453(k-1) of the

---

[1]
The Court draws these facts from the complaint and accepts them as true for the purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[2]
26 U.S.C. §§ 161, 172(b).

[3]
N.Y. Tax Law §§ 1450-68 (Consol. 2010) (repealed eff. Jan. 1, 2015).

[4]
*Id.* § 1453(a)(1).

[5]
*Id.* § 1453(b).

New York Tax Law, however, specifically addressed the treatment of NOLs for New York franchise tax purposes. In particular, it stated that:

> "A net operating loss deduction shall be allowed which shall be *presumably* the same as the net operating loss deduction allowed under section one hundred seventy-two of the internal revenue code, except that"[6]

certain modifications are required.

In 2008, in response to the global financial crisis, Congress passed the Troubled Asset Relief Program ("TARP").[7] TARP empowered the Department of Treasury ("Treasury") to purchase equity interests in publicly traded companies affected by the crisis.[8] Under its TARP authority, Treasury acquired significant ownership interest in Citigroup in late 2008.[9] Treasury later sold its Citigroup stock beginning in April 2009, realizing a $6.85 billion profit.[10]

From 2008 to 2010, the Internal Revenue Service ("IRS") issued a series of notices (the "IRS Notices") announcing that it would not treat Treasury's purchase or sale of equity interests under TARP as "ownership changes" triggering Section 382.[11] Accordingly, from 2010 to 2012

---

[6]

 *Id.* § 1453(k-1) (emphasis added).

[7]

 DI 1-1 ¶¶ 19-20.

[8]

 DI 1-1 ¶¶ 19-20.

[9]

 DI 1-1 ¶ 21.

[10]

 DI 1-1 ¶¶ 28-30.

[11]

 Notice 2009-38, issued in April 2009, announced the IRS' position that Treasury's purchase of stock would not trigger Section 382. DI 1-1 ¶ 25. In December 2009, the IRS superseded Notice 2009-38 with Notice 2010-2, which extended the IRS' position to cover Treasury's sale, in addition to its purchase, of stock through TARP. *Id.* ¶ 26.

4

Citigroup took a deduction for earlier-incurred NOLs on its federal and New York tax filings.[12]

Rasmusen filed this *qui tam* suit under seal in state court in 2013, alleging that Citigroup violated the New York False Claims Act[13] by improperly taking advantage of the NOL deduction on its state tax filings.[14]  After the New York Attorney General declined to intervene, Citigroup removed the action to federal court and moved to dismiss.[15]

*Discussion*

The complaint asserts a single claim via two distinct legal theories.  In the first, Rasmusen contends that "because the IRS Notices were promulgated improperly by the IRS, Citigroup was not entitled to rely upon them to reduce its taxable income for purposes of the IRC, or, for that matter, the New York Tax Law."[16]  In the alternative, he argues that "even if the IRS Notices are valid as a matter of federal law, they were not adopted or incorporated into the New York State Tax Law and, thus, Citigroup was not entitled to rely upon them to reduce its New York State tax liability."[17]  Under either theory, Rasmusen alleges that Citigroup took a deduction for its net operating loses on its state returns from 2010 to 2012 despite knowing that state law prohibited

---

[12]

DI 1-1 ¶ 35.

[13]

N.Y. State Fin. L. §§ 187-94 (McKinney 2016).

[14]

DI 1-1 ¶¶ 36-39.

[15]

DI 1-1.

[16]

DI 1-1 ¶ 33.

[17]

DI 1-1 ¶ 34.

it from doing so.[18]

Citigroup moves to dismiss on three grounds.  First, it contends that the suit is barred by the New York False Claims Act's public disclosure rule.  Next, Citigroup argues that the complaint fails to state a claim for violation of the New York False Claims Act.  Finally, Citigroup faults Rasmusen for failing to allege *scienter* with the requisite degree of specificity.

All three of Citigroup's arguments are potentially meritorious.  Before reaching the merits, however, the Court must assure itself of its jurisdiction.

I.          *Overview of Federal Question Jurisdiction*

A defendant may remove an action from state to federal court under Section 1441 of the Judicial Code[19] if the case would fall within a district court's "original jurisdiction."  One type of case over which federal district courts have original jurisdiction are those "arising under the Constitution, laws, or treaties of the United States."[20]  In the vast majority of "federal question" cases, a plaintiff pleads a cause of action created by federal law.[21]  In contrast, federal question jurisdiction generally is lacking where a complaint alleges only state law claims.  An exception exists, however, for a narrow class of cases that present an "embedded federal question" – cases in

---

[18]

DI 1-1 ¶¶ 36-37.

[19]

28 U.S.C. § 1441.

[20]

28 U.S.C. § 1331.

[21]

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

6

which "a federal question . . . is implicated in what ostensibly is a complaint based on state law."[22]

The Supreme Court has laid out a four-part test for determining whether an embedded federal question affords a basis for removal to federal court.  The asserted federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[23]  If the federal question fails to satisfy any of the four elements of the *Grable-Gunn* test, the district court must dismiss or remand the case to state court.

Complications arise in cases, like the one at hand, where a plaintiff pursues a single claim via distinct legal theories that implicate federal issues to varying degrees.  The possibility that a plaintiff may prevail on at least one theory independent of the disputed federal issue will call into question whether adjudication of the federal issue is truly "necessary" under the first prong of the *Grable-Gunn* test.  Accordingly, the Second Circuit has held that "[w]here a federal issue is present as only one of multiple theories that could support a particular claim . . . this is insufficient to create federal jurisdiction."[24]

II.        *The Complaint Does Not Necessarily Raise a Federal Issue*

Citigroup removed this case on the basis of federal question jurisdiction and cast as the federal issue plaintiff's contention "that three separate interpretations of *federal* law by a *federal*

---

[22]

*In re Lehman Bros. Sec. & ERISA Litig.*, 2012 WL 983561, at *6 (S.D.N.Y. Mar. 22, 2012).

[23]

*Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013) (*citing Grable*, 545 U.S. at 314); *accord New York ex. rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (identifying the four requirements as the "*Grable-Gunn* test").

[24]

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005).

agency were each invalid because they were allegedly inconsistent with three separate *federal* statutes and improperly promulgated as a matter of *federal* administrative law."[25]   According to Citigroup, the Court must rule on this substantial federal issue to resolve the case.

In so framing the federal question said to be presented, Citigroup addresses only the first of Rasmusen's two theories of recovery – that the IRS Notices were invalid and that Citigroup's reliance on them led it to claim improper deductions on its federal and, by extension, state tax filings.[26]  But that theory does not truly present a federal question.  Rasmusen concedes, and in any case the Court holds, that he lacks standing to challenge the validity of the IRS Notices.[27]  In consequence, this Court would not pass on whether the IRS' interpretation of Section 382 was arbitrary and capricious in ruling on Rasumusen's New York False Claims Act claim.  Analysis of the alleged federal issue would not be necessary to the resolution of the claim with respect to the validity of the IRS Notices.[28]

Rasmusen's alternative theory of recovery is even further removed from a substantial

---

[25]

DI 1 ¶ 13.

[26]

In addition to proving that Citigroup took a deduction for which it did not qualify, Rasumusen would need to prove that it acted with the requisite mental state to prevail on his New York False Claims Act claim.  *See People v. Sprint Nextel Corp.*, 26 N.Y.3d 98, 112 (2015).  The Court, of course, makes no comment on the strength of that argument.

[27]

DI 16 at 14 ("Although it was nonsensical for the IRS to declare that buying shares does not lead to increased ownership, no one other than Treasury or Citigroup has standing to challenge [the validity of the IRS Notices] as a matter of federal tax liability.").

[28]

*See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1988) (recognizing that a federal court properly may dismiss for lack of jurisdiction an ostensible federal claim where the claim is "wholly insubstantial and frivolous") (internal quotation marks omitted); *see also Fair v. Verizon Commc'ns, Inc.*, 2014 WL 2624758, at *1 (S.D.N.Y. June 5, 2014) (applying that principle to dismiss for lack of jurisdiction where plaintiff was prevented by statute from bringing the sole federal claim in the complaint").

federal question.  Rasmusen contends that, even if the IRS Notices were sound as a matter of federal law, New York law incorporates only the IRC's definitions of net income and NOLs deductions and not the IRS' interpretation of them.  In effect, he concedes in this alternative argument that Citigroup was eligible for the NOL deduction on its federal tax filings, but insists that the New York Tax Law diverges from federal law on this issue.[29]

It is true of course that New York interprets its tax laws to accord with federal law whenever possible.[30]  Moreover, former Tax Law Section 1453(k-1)'s statement that "[a] net operating loss deduction shall be allowed which shall be *presumably* the same as the [federal] net operating loss deduction" certainly is consistent with the view that the New York NOL deduction is identical to the federal deduction except where Section 1453 explicitly modifies it.  Indeed, that seems almost the inevitable construction against the background of (1) New York's policy to interpret its tax laws to accord with federal law, and (2) a specific holding with respect to the exceptionally limited significance of the word "presumably" in New York Tax Law Section 208.[31]  But the issue whether that is the proper construction of Section 1453(k-1) in the end presents a question purely of state law.  And if the proper construction of this New York statute is that the New York Tax Law did not permit Citigroup to take the NOL deductions that it took on its state returns,

---

[29]
       *See* DI 1-1 ¶ 34 (alleging that the IRS Notices interpreting Section 382 "were not adopted or incorporated into the New York State Tax Law").

[30]
       *Michaelsen v. N.Y.S. Tax Comm'n,* 67 N.Y.2d 579, 583 (1986); *Delese v. Tax Appeals Tribunal,* 3 A.D.3d 612, 613-14, 771 N.Y.S.2d 191, 194-95 (3d Dep't 2004); *see , e.g.*, Office of Tax Policy Analysis Tech. Servs. Div., New York State Dep't of Taxation & Fin., Advisory Op. No. TSB-A-07(2)C (2007) (applying Treasury regulations to interpret Section 382 for purposes of New York tax calculations).

[31]
       *See Dreyfus Special Income Fund v. N.Y.S. Tax Comm'n*, 126 A.D.2d 368, 372, 514 N.Y.S.2d 130, 133-34 (3d Dep't 1987), *aff'd*, 72 N.Y.2d 874 (1988).

regardless of whether such deductions were proper on its federal returns, then the case could be decided without reference to the propriety of those deductions under IRC Section 382 for purposes of its federal returns.[32]   As Rasmusen theoretically[33] could prevail on this claim without determination of any federal question, the complaint does not *necessarily* raise a federal issue.

That fact distinguishes this case from *Broder*[34] and *Jacobson*[35] two cases in which the Second Circuit held an asserted federal question "necessarily raised" under the *Grable-Gunn* test.  Plaintiffs in both cases brought state law claims that relied upon federal law in a way that made success on the federal issue a prerequisite to their success in the case.  In *Broder*, the plaintiff alleged that the defendant breached a contract term that incorporated by reference federal standards governing the rates cable providers might charge customers.[36]  In order to prove breach, the plaintiff had to demonstrate that the defendant cable provider violated federal law.  The plaintiff in *Jacobson* brought a New York False Claims Act action, alleging that defendant Wells Fargo had "filed false

---

[32]

    For this reason, a decision on the merits in this case would have no preclusive affect on later cases interpreting federal law.  Thus, even assuming *arguendo* that Section 1453's incorporation of federal definitions necessarily raises a federal issue in every case involving that section, the potential federal issue would be insubstantial and would fail the *Grable-Gunn* test for that reason alone.  *See, e.g., Haith ex. rel. Accretive Health Inc. v. Bronfman*, 928 F. Supp.2d 964, 971-72 (N.D. Ill. 2013).

[33]

    The Court does not rule on the merits of this argument.  However likely it may be that a New York court would disagree with Rasmusen and find that there is no daylight between the federal and state law regarding Citigroup's eligibility for the NOL deduction, that is not inevitable.  But that is the claim that  Rasumusen brought and the one with respect to which the Court must assess its jurisdiction, no matter its dubious merit.

[34]

    418 F.3d 187.

[35]

    824 F.3d 308.

[36]

    *See* 418 F.3d at 191, 195.

Real Estate Mortgage Investment Conduit ('REMIC') income tax returns with the [IRS] to claim federal income tax exemptions" for which it did not qualify, and "that because New York law exempts a trust from State and City taxation if it is treated as a REMIC for federal income tax purposes, the false federal filings meant that defendants *also* fraudulently avoided paying New York taxes."[37] Consequently, whether the defendant violated the New York False Claims Act was entirely derivative of whether it had filed fraudulent federal tax filings.

Rasmusen, on the other hand, alleges that Citigroup violated the New York Tax Law (and thus the New York False Claims Act) notwithstanding its compliance with federal law as articulated in the IRS notices.  Whether or not he prevails on that argument, he has alleged it in a way that decouples his prospects of success on the state law claim from the federal issue.

Accordingly, the Court concludes that the federal issue fails under the first "necessarily raised" prong of the *Grable-Gunn* test and does not address the remaining three elements.

---

[37]     824 F.3d at 310 (emphasis added).

*Conclusion*

For the foregoing reasons, this Court lacks jurisdiction over the subject matter of this action.  The case is remanded to the state court from which it was removed.  Citigroup's motion to dismiss [DI 12] is denied without prejudice given the Court's lack of jurisdiction.

SO ORDERED.

Dated:        December 2, 2016

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)